THEODORE B. STOLMAN (State Bar No. CA 52099)
TStolman@Stutman.com
Whitman L. Holt (State Bar No. CA 238198)
WHolt@Stutman.com
STUTMAN, TREISTER & GLATT, PC
1901 Avenue of the Stars, 12th Floor
Los Angeles, California 90067
Telephone:  (310) 228-5600
Facsimile:  (310) 228-5788

Attorneys for Plaintiff Fremont General Corporation
Debtor-in-Possession

-and-

J. THOMAS GILBERT (State Bar No. CA 183362)
TGilbert@pattonboggs.com
JOHN W. SCHRYBER (State Bar No. NY 7881)
JSchryber@pattonboggs.com
ROBERT W. JONES (State Bar No. TX 10951200)
PATTON BOGGS LLP
2001 Ross Avenue, Suite 3000
Dallas, Texas 75201-8001
Telephone: (214) 758-1500
Facsimile: (214) 758-1550

Attorneys for Plaintiffs Fremont General Corporation,
Debtor-in-Possession, and Fremont Reorganizing Corporation (f/k/a
Fremont Investment & Loan)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re<br>FREMONT GENERAL CORPORATION,<br>Debtor-in-Possession<br><br>Tax I.D. 95-2815260<br>───────────────────────<br>FREMONT GENERAL CORPORATION,<br>Debtor-in-Possession, and<br>FREMONT REORGANIZING<br>CORPORATION (f/k/a<br>FREMONT INVESTMENT & LOAN),<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>FEDERAL INSURANCE COMPANY,<br><br>　　　Defendant.<br>─────────────────────── | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Case No. 8:09-cv-00678-DOC
Bankr. Case No. 8:08-bk-13421-ES
Adv. Proc. 8-08-ap-01418-ES

Chapter 11

**PLAINTIFFS' RESPONSE IN OPPOSITION TO FEDERAL INSURANCE COMPANY'S MOTION TO WITHDRAW REFERENCE TO BANKRUPTCY COURT; DECLARATION IN SUPPORT THEREOF**

**Hearing Date:**
DATE:  July 13, 2009
TIME:  8:30 a.m.
PLACE: Courtroom 9D

527336

# Table of Contents

Page

I.    INTRODUCTION ................................................. 1

II.   FACTUAL BACKGROUND .......................................... 2

  A.   The Policies. ........................................... 2

  B.   The Underlying Claims ................................... 3

    1.   The Mass AG Lending Claim. ........................... 3

    2.   The Other BPL Claims. ................................ 4

    3.   The NAACP Discrimination Claim. ...................... 4

  C.   The Adversary Proceeding. ............................... 5

  D.   Bankruptcy Court Proceedings. ........................... 5

III.  ARGUMENT ................................................... 10

  A.   The Motion to Withdraw the Reference is Untimely. ....... 10

  B.   There is No "Cause" To Withdraw the Reference. .......... 15

IV.   CONCLUSION ................................................. 25

527336

1

2

**TABLE OF AUTHORITIES**

3

4

**Page(s)**

CASES

5

6

*Aetna Cas. & Sur. Co. v. Dannenfeldt,*
    778 F. Supp. 484 (D. Ariz. 1991)............................ 20

*Allard v. Benjamin (In re DeLorean Motor Co.),*
    49 B.R. 900 (Bankr. E.D. Mich. 1985)........................ 15

*Brizendine v. Montgomery Ward & Co., Inc.,*
    143 B.R. 877 (N.D. Ill. 1992)............................... 11

*Certain Underwrites at Lloyds v. Inlet Fisheries, Inc.,*
    2006 U.S. Dist. LEXIS 37921 (D. Alaska 2006)............. 20-21

*Chrysler Credit Corp. v. Fifth Third Bank of Columbus (In re
    Onyx Motor Car Corp.),*
    116 B.R. 89 (S.D. Ohio 1990)................................ 15

*Federal Ins. Co. v. Glen Ivy Mgmt. Co.,*
    171 B.R. 98 (Bankr. C.D. Cal. 1994)......................... 24

*Gulf USA Corp. v. Federal Ins. Co.,*
    259 F.3d 1059.......................................... 20, 21

*In re Ascher,*
    128 B.R. 639 (Bankr. N.D. Ill. 1991)........................ 22

*In re Baldwin-United Corp.,*
    57 B.R. 751 (S.D. Ohio 1985)................................ 20

*In re Beverly,*
    2007 Bankr. LEXIS 3928 (C.D. Cal. 2007)..................... 20

*In re Daewoo Motor America, Inc.,*
    302 B.R. 308 (C.D. Cal. 2003).......................... passim

*In re Giorgio,*
    50 B.R. 327 (D. R.I. 1985)................................. 20

*In re H&W Motor Express Co.,*
    343 B.R. 208 (N.D. Iowa 2006)..................... 11, 18, 19

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

527336

*In re Marina Assoc.*,
   1989 WL 206465 (N.D. Ill. June 7, 1989)...................... 10

*In re New York Trap Rock Corp.*,
   158 B.R. 574 (S.D.N.Y. 1993)........................... 14, 16

*In re Pied Piper Casuals, Inc.*,
   65 B.R. 780 (S.D.N.Y. 1986)................................ 21

*In re Prudential Lines, Inc.*,
   170 B.R. 222 (S.D.N.Y. 1994)............................... 22

*In re Ramex Inat'l, Inc. v. Maryland Cas. Co.*,
   91 B.R. 313 (E.D. Pa. 1988)................................ 21

*In re Reliance Group Holdings, Inc.*,
   273 B.R. 374 (Bankr. E.D. PA 2002)......................... 22

*In re Stavriotis*,
   111 B.R. 154 (N.D. Ill. 1990).............................. 10

*Lain v. Gross*,
   128 B.R. 588 (D. Main 1991)................................ 11


STATUTES

28 U.S.C. § 157 ....................................... passim

Fed. R. Civ. P. 38 ........................................ 16

Fed. R. Civ. P. 12 ......................................... 9

Fed. R. Bankr. P. 9019 ................................ passim

-iii-

527336

Plaintiffs Fremont General Corporation, the Debtor-in-Possession herein ("FGC"), and Fremont Reorganizing Corporation (f/k/a/ Fremont Investment & Loan)("FRC")(collectively, "Fremont") file this response in opposition to Defendant Federal Insurance Company's (the "Defendant") Motion to Withdraw Reference to Bankruptcy Court (the "Motion") and Declaration of John W. Schryber in support thereof (the "Schryber Declaration"), and respectfully state as follows:

## I.    INTRODUCTION

After more than eight months of participating in an adversary proceeding that is the subject of two pending motions, and following an adverse ruling by the bankruptcy court, the Defendant has decided that it is time to withdraw the reference and shop the matter to a new judge.  Unfortunately for the Defendant, a motion to withdraw the reference must be timely made at the first reasonable opportunity.  It is well established that where -- as here -- a defendant waits an inordinate period of time to file such a motion, or only does so after sustaining unfavorable rulings, the motion is nothing but forum shopping, and is untimely.  Moreover, the facts here demonstrate why other considerations, such as judicial economy and uniform administration of the bankruptcy case, dictate that the Defendant's motion should be denied.

-1-

527336

## II.  FACTUAL BACKGROUND

This adversary proceeding is an insurance coverage action filed by Fremont on October 20, 2008 in the Bankruptcy Court.[1]  The complaint (as amended by Fremont on February 13, 2009), includes two counts seeking declaratory relief as well as causes of action for breach of contract as a result of the Defendant's anticipatory repudiation of its duty to indemnify and subsequent denial of its obligations under the terms of certain insurance policies issued by the Defendant to Fremont(Adv. Dkt. 19).

The facts below are set out in more comprehensive detail in two dispositive motions filed by Fremont and currently pending in the adversary proceeding:  (i) Plaintiffs' Motion for Partial Summary Adjudication as to Count I of the First Amended Complaint (the memorandum of points and authorities in support thereof is annexed hereto as Ex. B); and (ii) Plaintiffs' Motion for Judgment on the Pleadings (the memorandum of points and authorities in support thereof is annexed hereto as Ex. C).[2]

**A.  The Policies.**

Defendant issued two insurance policies to Fremont, a Banking Practices Liability ("BPL") policy, which provides Fremont with indemnification for any defense costs, settlements, and judgments

---

[1] The Original Complaint filed by Fremont in this adversary proceeding is located at Dkt. No. 1, Case No. 8:08-ap-01418-ES (referred to herein as "Adv. Dkt."; citations to the bankruptcy proceeding, Case No. 8:08-ap-13421-ES, are referred to herein as "Bkr. Dkt.").

[2] To avoid burdening the Court with extensive exhibits, Fremont will refer to those exhibits by citing to the moving briefs, and hereby incorporates all exhibits to those motions by reference.

-2-

1    incurred as a result of any "loss" on account of "Lending Claims,"

2    (Ex. B at 4-5) and a Commercial General Liability ("CGL") policy,

3    which provides Fremont with indemnification for "discrimination"

4    claims filed against Fremont during the coverage period (Ex. C at

5    2).  The CGL Policy is an occurrence-based policy, which means that

6    claims can be made at any time, as long as the events triggering

7    coverage occurred during the policy period (Ex. C at 4-5).

8    **B.    The Underlying Claims.**

9        After issuance of the policies, several claims were asserted

10   against Fremont which qualify as claims under the policies, and

11   Fremont has, therefore, requested that the Defendant fulfill its

12   coverage obligations pursuant to the terms of the policies.

13       **1.    The Mass AG Lending Claim.**

14       The first claim asserted against Fremont was commenced by the

15   Massachusetts Attorney General and styled *Commonwealth of*

16   *Massachusetts v. Fremont Inv. & Loan*, Civ. Action No. 07-4373 BLS-1

17   (Superior Court of Suffolk County, Massachusetts) (the "Mass AG

18   Claim") (Ex. B at 5).  Fremont forwarded a copy of the Mass AG

19   Claim to the Defendant in the first week of November 2007, with a

20   request for coverage (Ex. B at 7).  Other than merely acknowledging

21   receipt of the tender, the Defendant failed to respond for nearly

22   eight months (Ex. B at 7).  Only after FGC filed its bankruptcy

23   petition on June 18, 2008 did the Defendant finally express its

24   position on coverage.  (Ex. B at 7-9).  The position expressed by

25   Defendant was an unequivocal denial of its duty to (i) indemnify

26

27

28                                          -3-

any future settlement or judgment entered upon the Mass AG Claim, despite an acknowledgement that the Mass AG Claim was a "Lending Claim" under the BPL Policy; and (ii) advance defense costs unless Fremont entered into a new contract. (Ex. B at 7-9). Fremont never signed the new contract (Ex. B at 9).

**2.    The Other BPL Claims.**

In addition, to-date, at least six claims brought by plaintiffs *other than* the Mass AG fall within the BPL Policy's insuring clause -- which include suits by "*Darden*," "*Habib*," "*Harris*," "*Lacet*," "*Smith*," and "*Beckett*". In each instance, Fremont has tendered notice to the Defendant of the initiation of the lawsuits and requested that the Defendant provide coverage pursuant to the terms of the BPL Policy. The Defendant has acknowledged these related claims, and has advanced defense costs incurred by Fremont in defense of the related claims (Ex. D).

**3.    The NAACP Discrimination Claim.**

On December 20, 2007, FRC was served with a lawsuit filed by the NAACP, against FRC and others, in the United States District Court for the Central District of California, and styled *National Association for the Advancement of Colored People (NAACP) v. Ameriquest Mortgage Company, et. al.*, Case No. SACV 07-0794-AG (ANX) (the "NAACP Claim") (Ex. C at 3). Once again, FRC forwarded a copy of the complaint to the Defendant and requested coverage pursuant to the terms of the CGL Policy (Ex. C at 4). On February

-4-

12, 2008, the Defendant disclaimed any obligation to provide coverage of that claim, thereby anticipatorily repudiating the insurance contract.  (Ex. C at 5).

## C.  The Adversary Proceeding.

Because of the aforementioned disclaimers, the Defendant anticipatorily repudiated its obligations under both the BPL and CGL policies as they related to those claims, and Fremont was forced to initiate this adversary proceeding.  Fremont's Complaint seeks not only a declaration that the insurer's conduct breached the policies as they related to the Mass AG and the NAACP claims, but also a declaration that, on a going forward basis, there is no "duty to cooperate" with the Defendant with respect to *any* claim asserted within the scope of the policies, including claims already filed against Fremont *in addition to* the Mass AG and NAACP claims, *and* any claims which have not yet been filed (Adv. Dkt. at 1, 17).

After Fremont filed the Complaint, Defendant asked Fremont and the Bankruptcy Court for multiple extensions of time to answer the Complaint, and was granted all three of them.  (Adv. Dkt. at 7, 10, 15).  Fremont amended the Complaint on February 13, 2009, and on March 6, 2009, Defendant filed its Answer (Adv. Dkt. at 17, 23).

## D.  Bankruptcy Court Proceedings.

### 1.  The BPL Policy.

Prior to answering, Defendants joined in a motion that Fremont filed in the Bankruptcy Court to lift the automatic stay to allow

-5-

527336

the Defendant to disburse policy proceeds payable on behalf of the

debtor (the "Motion to Lift Stay") (Bkr. Dkt. at 469).  In that

filing with the Bankruptcy Court, Federal conceded that the Mass

AG's claim was a covered claim.  Specifically, Federal joined in a

motion that stated as follows:

> Federal has advised the Debtor and FRC that it
> is willing to advance their Defense Costs in
> the MA AG Action, subject to the Policy's terms
> and conditions and a mutual reservation of any
> rights that may be available under either the
> Policy or applicable law, provided that they
> obtain this Court's prior approval for those
> advances, in view of the possibility that the
> proceeds of the Policy at issue might be deemed
> property of the bankruptcy estate.

(Bkr. Dkt. 470 at ¶ 8).  The Defendant joined the Motion to Lift

Stay on February 27, 2009 and affirmatively stated that it would

disburse certain defense costs payable on behalf of the debtor --

for current and "future" claims tendered by Fremont -- provided

that the Defendant was permitted by Bankruptcy Court order to

disburse those costs (Bkr. Dkt. at 528).

Pursuant to Federal's Joinder, the Bankruptcy Court lifted the

automatic stay. (Bkr. Dkt. at 555).  Thereafter, Defendant paid

approximately $4.6 million to defray some (but not all) defense

costs incurred by Fremont on account of the Mass AG Claim and

related claims (Ex. B at 10).  Notwithstanding, Defendant has

asserted its "right to recoup some or all of those payments" (Adv.

Dkt. at 23, ¶ 3).  That is, Defendant asserts that the debtor does

not have a present possessory interest in the approximately $4.6

million paid.

527336

1    Meanwhile, Fremont and the Mass AG jointly proposed to the

2  Bankruptcy Court, in the main bankruptcy case, a settlement of the

3  Mass AG Claim.  The Mass AG and Fremont expressly conditioned the

4  formation of that settlement agreement on the Bankruptcy Court

5  making findings and conclusions necessary to establish that the

6  settlement agreement and amount was reasonable.  Fremont filed a

7  motion pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy

8  Procedures (the "Rule 9019 Motion"), seeking an order approving the

9  "Jointly Proposed Settlement Agreement" (Ex. B at 11; Bkr. Dkt. at

10 599).  The Defendant filed multiple objections in connection with

11 the Rule 9019 Motion, and attended the May 14, 2009 hearing (Ex. B

12 at 11-12; Bkr. Dkt. 630, 648).  Each of the objections challenged

13 the reasonableness of the settlement (Ex. B at 11-12).  One of

14 those objections challenged whether the "settlement as a whole, or

15 as allocated to the various claims asserted by the Mass AG is

16 reasonable" (Ex. B at 12). In a "tentative ruling," the Bankruptcy

17 Court granted the motion over Federal's objections: "Grant motion.

18 The response filed by FIC [Federal Insurance Company] presents no

19 grounds for denial of the motion" (Ex. B at 12).

20    A final order granting the Rule 9019 Motion was entered on May

21 29, 2009 (Bkr. Dkt. at 705).  Concurrently therewith, the

22 Bankruptcy Court entered detailed Findings of Fact and Conclusions

23 of Law establishing the basis for its ruling in favor of the

24 proposed settlement and against the Defendant's position (the "9019

25 Findings") (Ex. A).  The Bankruptcy Court expressly stated that its

26 9019 Findings were informed by the submissions of "parties in

27 interest," including the party-in-interest submissions of "Federal

28                                -7-

527336

Insurance Company" (Ex. A at 2).   Further rejecting Federal's objections in favor of the proposed settlement between Fremont and the Mass AG, the Court stated that it considered the strength of the Mass AG's allegations and the risk to Fremont, "the relative merits of the underlying claims and defenses thereto," the "substantial expense" of continued litigation, that "rejection of the compromise would likely result in the wasting of assets of the Debtor's estate," as well as evidence regarding Fremont' "exposure to liability" and "the amount to be awarded pursuant to the Jointly Proposed Settlement Agreement" (Ex. A).   On June 9, 2009, the Massachusetts state court approved the settlement agreement proposed in connection with the Rule 9019 Motion as reasonable (Ex. B at 15).   On that same day, Fremont wired $10 million to satisfy Fremont's settlement liability (Ex. B at 15).

Within three days of the state court's adoption of the Bankruptcy Court's adjudication of the "settlement reasonableness" issue, on June 12, 2009, Fremont filed a Motion for Partial Summary Adjudication (the "Summary Judgment Motion") based upon the final adjudication of that "settlement reasonableness" issue.   (Ex. B; Adv. Dkt. 31, 32).   The Summary Judgment Motion is based on the collateral estoppel effect of the final adjudication of "settlement reasonableness" issue in a proceeding in which all parties to the adversary proceeding were "parties in interest." (Ex. B at 20-28). The Summary Judgment Motion was scheduled by the Bankruptcy Court for a hearing in the Bankruptcy Court on October 6, 2009, and the Defendant's answering brief is due September 15, 2009.

-8-

527336

A few days prior to the Summary Judgment Motion, on June 8, 2009, *but only after the entry of the 9019 Findings by the Bankruptcy Court*, the Defendant filed this Motion to withdraw the reference.

**2.    The CGL Policy.**

On April 16, 2009, Fremont filed a Motion for Partial Judgment on the Pleadings pursuant to Fed.R.Civ.P. 12(c) (the "12(c) Motion") in connection with the NAACP claim under the CGL Policy (Ex. C).  The 12(c) Motion establishes that, as a matter of law, the Defendant is obligated to advance defense costs and has breached its duty to defend FRC in connection with the NAACP Claim. The 12(c) Motion was scheduled by the Bankruptcy Court for hearing on August 6, 2009, and the Defendant's answering brief is due on July 23, 2009.

**3.    The June 18, 2009 Status Conference.**

On June 18, 2009, the Bankruptcy Court convened a status conference.  (Schryber Declaration ¶ 2).  The Defendant advised the court that it had filed a motion to withdraw the reference.  *Id*. Counsel inquired of the Bankruptcy Court whether the Bankruptcy Court intended to stay the adversary proceeding during the pendency of this motion to withdraw the reference.  *Id*.  The Bankruptcy Court sated that no stay would be imposed.  *Id*.  Accordingly, the hearing on the 12(c) motion remains scheduled for August 6, 2009, and Federal's response brief remains due on July 23, 2009.

-9-

527336

Similarly, the hearing of the Summary Judgment Motion remains scheduled for October 6, 2009, and Federal's response brief remains due on September 15, 2009.

### III. ARGUMENT

### A.   The Motion to Withdraw the Reference is Untimely.

Defendant's request to withdraw the reference is untimely, and thus the Court can deny the Motion without even addressing the arguments raised in Defendant's moving memorandum.  28 U.S.C. § 157(d) provides that a motion to withdraw the reference must be "timely" filed.  Courts have held that such a motion *must* be made either (1) as soon as possible after notice of the grounds for withdrawing the reference, or (2) "at the first reasonable opportunity" and without "undue delay."  *In re Marina Assoc.*, 1989 WL 206465 at *19-20 (N.D. Ill. June 7, 1989); *In re Baldwin-United Corp.*, 57 B.R. 751, 753 (S.D. Ohio 1985)(citation omitted).

The purpose of the timely requirement is to "protect the court and the parties from useless costs and disarrangement of the calendar, and to prevent unnecessary delay and the use of stalling tactics."  *In re Giorgio*, 50 B.R. 327, 328-29 (D. R.I. 1985). Failure to timely file a motion to withdraw the reference waives a party's rights under Section 157(d).  *See In re Stavriotis*, 111 B.R. 154, 157 (N.D. Ill. 1990) (holding if motion to withdraw is not timely made, a party's rights under Section 157(d) are "deemed waived"); *see also In re Giorgio*, 50 B.R. at 329 ("[A] party has a

-10-

plain duty to act diligently -- or else, to forever hold his peace").

The test for timeliness is whether, under the circumstances of the particular case, a motion to withdraw was filed as "soon as possible." *In re H&W Motor Express Co.*, 343 B.R. 208, 213 (N.D. Iowa 2006)(holding five month delay coupled with a failure to offer "any reasons to justify...delay," was cause to deny motion as untimely); *see also Brizendine v. Montgomery Ward & Co., Inc.*, 143 B.R. 877, 878 (N.D. Ill. 1992) (seven months untimely); *Stavriotis*, 11 B.R. 154 (five months); *Lain v. Gross*, 128 B.R. 588 (D. Main 1991) (six months). Here, the Defendant's Motion does not satisfy the threshold requirement of timeliness. This adversary proceeding was filed on October 20, 2008, and -- after multiple extensions of time to answer the complaint were granted -- the Defendant filed its answer on March 6, 2009 (Adv. Dkt. 1, 17, 23). But, the Defendant, without providing any justification, has waited more than eight months to file this Motion.

There is another important reason that the Defendant's Motion is untimely. Here, the Defendant improperly waited until it sustained adverse findings in the Bankruptcy Court. Specifically, the Bankruptcy Court -- ten days prior to the filing of this Motion -- expressly found that the settlement of the Mass AG claim was reasonable (Ex. A at 7-9). That finding is particularly important here, as Fremont has moved for summary judgment on the breach of

-11-

527336

contract claim, arguing that the Defendant is collaterally estopped from re-litigating "settlement reasonableness."  The Summary Judgment Motion is predicated on the Bankruptcy Court's findings establishing, inter alia:  (i) all of the "settlement reasonableness" factors necessary to decide Fremont's damages for the breach of contract claim as a matter of law; and (ii) the Defendant's status as "party in interest" to the Rule 9019 Motion.

As explained in the Summary Judgment Motion, Federal is obligated to pay the "reasonable" amount of a settlement of a lawsuit that, by its allegations, create the potential for a covered judgment (Ex. B at 18-19).  Just as the Defendant is bound by the insurance policy to indemnify reasonable settlements of covered claims, the Bankruptcy Court expressly and specifically found that the jointly proposed settlement agreement was reasonable (Ex. A at 7).  As argued in the Summary Judgment Motion at p. 20, one of the factors necessary to invoke collateral estoppel is that "the issue was actually litigated" (Ex. B).  As set forth in pp. 22-25 of the Summary Judgment Motion, "settlement reasonableness" was "actually litigated" because the "test for 'settlement reasonableness' under Rule 9019 considers the same factors used to determine settlement reasonableness under California law" (Ex. B). In the supporting memorandum, Fremont details precisely how the Bankruptcy Court's findings establish that the Bankruptcy Court (i) considered the evidence and arguments in support of every

-12-

527336

conceivable factor that a California court might consider when evaluating settlement reasonableness; and (ii) ultimately ruled, over the Defendant's objections, that the settlement is reasonable. Indeed, in the Court's tentative ruling, the Bankruptcy Court stated:  "Grant motion.  The response filed by FIC [Federal Insurance Company] presents no grounds for denial of the motion" (Ex. B at 12, citing SF ¶ 41).

As also set forth in the Summary Judgment Motion, another requirement for invoking collateral estoppel is that "the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action" (Ex. B at 20).  Here, the Bankruptcy Court's Rule 9019 Order states that its Findings of Fact and Conclusions of Law were informed by the submissions of "parties in interest," including the party in interest submissions of "Federal Insurance Company" (Ex. B at 12). In addition, as set forth in the Summary Judgment Motion, the Defendant is unquestionably a "party in interest" because, inter alia, the Defendant filed two "limited" objections to the Rule 9019 Motion and attended the hearing, and because the Defendant posited itself as a contingent creditor of the estate, and otherwise has a financial stake in the proceedings (Ex. B at 26-28).

Thus, the issue of whether the settlement is or is not "reasonable" has been finally adjudicated by the Bankruptcy Court in the 9019 Findings entered upon the Rule 9019 motion -- a motion

-13-

527336

as to which the Defendant was a party in interest and as to which the Defendant made submissions to the Bankruptcy Court on the "reasonableness" issue (Ex. B at 20-26). It is little wonder that it is *now* -- and only after such a finding was made by the Bankruptcy Court -- that the Defendant seeks to change forums. But the Motion at this juncture is nothing more than forum shopping, and should be denied as untimely.

*In re New York Trap Rock Corp.*, 158 B.R. 574, 577 (S.D.N.Y. 1993) is on point. There, three months after an initial complaint was filed asserting breach of a contract for sale of property, the bankruptcy court entered a ruling "adverse to the [defendant] as to certain points," including that the defendant had notice of certain problems on the property which were relevant to the breach of contract dispute. Eleven days after entry of the adverse findings, the defendant filed its motion to withdraw the reference. The district court denied the motion to withdraw, holding that "to permit an application to withdraw the reference...when first filed at such a juncture, would reward forum shopping." *Id.*

As in *New York Trap Rock Corp.*, the Defendant here sees the "collateral estoppel" writing on the wall. Because the Bankruptcy Court is intimately familiar with (i) its consideration of the evidence and arguments in support of settlement reasonableness; and (ii) Federal's participation in the Rule 9019 proceedings, the Defendant is likely to be collaterally estopped from re-litigating

-14-

527336

settlement reasonableness, and therefore is attempting to shop for a new court to adjudicate the breach of contract claim.  As a result, the Motion here is untimely and made solely for the purpose of forum shopping, and the Motion should therefore be denied.

**B.    There is No "Cause" To Withdraw the Reference.**

Not only is the Motion untimely, but the Defendant has also failed to establish the requisite "cause" for withdrawal of the reference to the Bankruptcy Court.  To establish cause as required by 28 U.S.C. § 157(d), the movant has the burden, and must overcome the presumption that "Congress intended to have bankruptcy proceedings adjudicated by the bankruptcy court unless rebutted by a contravening policy." *Allard v. Benjamin (In re DeLorean Motor Co.)*, 49 B.R. 900, 912 (Bankr. E.D. Mich. 1985).  In order to overcome the presumption, the movant must establish that "truly exceptional and compelling circumstances" exist which warrant withdrawal of the reference.  *Chrysler Credit Corp. v. Fifth Third Bank of Columbus (In re Onyx Motor Car Corp.)*, 116 B.R. 89, 91 (S.D. Ohio 1990) (holding that without compelling cause, a "motion for withdrawal of the reference" under the non-mandatory provision, will "not be well received").

A number of factors should be weighed on a "case by case" basis to determine whether "cause" exists to withdraw the reference.  *See In re Daewoo Motor America, Inc.*, 302 B.R. 308, 310

-15-

527336

1  (C.D. Cal. 2003).³  Here, those factors overwhelmingly demonstrate

2  that cause does not exist to withdraw the reference.

3      First, and most importantly, this motion constitutes nothing

4  more than forum shopping.  As established above, the Defendant has

5  improperly waited until after the entry of adverse findings by the

6  Bankruptcy Court before filing its Motion.  *See New York Trap Rock*,

7  158 B.R. at 577.

8

9      Second, the claims in this case will not be tried to a jury.

10  Fremont did not request a jury in its complaint (Adv. Dkt. at 1,

11  17), and the Defendant did not include a jury demand in its answer

12  (Adv. Dkt. at 23).  It has been more than "10 days after the

13  service of the last pleading directed to an issue triable of right

14  by a jury," and therefore, the parties have waived any right to a

15  jury trial.  Fed. R. Civ. P. 38(b); *see In re Daewoo*, 302 B.R. at

16  314-15 (holding that because the defendant failed to "file a timely

17  jury demand" within the ten-day period after filing its answer, the

18  defendant "waived its right to jury trial," and the factor weighed

19  against withdrawal of the reference).

20      Third, the factors of efficient use of judicial, estate, and

21  non-debtor resources, and uniformity of bankruptcy administration,

22  all weigh heavily in favor of not withdrawing the reference.  That

23

24

25  ³ Those factors include:  (1) whether the claim is core or non-core; (2) whether
26  the claim is legal or equitable; (3) whether the claim is triable by a jury; (4)
    the most efficient use of judicial resources; (5) reduction of forum shopping;
27  (6) conservation of estate and non-debtor resources; and (7) uniformity of
    bankruptcy administration.  *In re Daewoo Motor America, Inc.*, 302 B.R. at 310.

28                              -16-

527336

is because the Bankruptcy Court here is familiar with -- and already has considered -- many of the issues involved in this adversary proceeding.

After notifying the Defendant, Fremont sought Bankruptcy Court approval for a proposed settlement with the Mass AG and filed the Rule 9019 Motion (Ex. B at 11-15).  During the settlement approval proceedings, parties in interest made arguments, and introduced evidenced pertaining to whether the proposed settlement was reasonable (Ex. B at 11-12).  After reviewing the submissions of parties in interest, and following a hearing, the Bankruptcy Court approved the proposed settlement agreement, and issued findings of fact and conclusions of law in support of the ruling (Ex. A).  The Bankruptcy Court's previous determination that the settlement is reasonable is now challenged by the Defendant's answer, which contains an affirmative defense against liability "to the extent [Fremont] may have failed to adequately mitigate, minimize or avoid their alleged losses" (Adv. Dkt. at 23).

Moreover, Fremont has filed two dispositive motions, which are both set for hearing before the Bankruptcy Court (Ex. B, C). Particularly, in the Summary Judgment Motion, the central issue is whether the Bankruptcy Court's prior determination collaterally estops the Defendant from re-litigating settlement reasonableness.

Because the Bankruptcy Court has already considered all of the issues relevant to the settlement reasonableness determination, as

-17-

527336

documented in 10 pages of findings of fact and conclusions of law,
judicial economy and uniform bankruptcy administration are better
served by *not* withdrawing the reference.  *See Daewoo*, 302 B.R. at
315 ("given the bankruptcy court's prior consideration of some of
the issues in this matter...the factors support keeping this
proceeding in the bankruptcy court"); *see also In re H&W Motor
Express Co.*, 343 B.R. 208, 215 (N.D. Iowa 2006) ("it is equally
true that [the bankruptcy judge] has a better vantage point from
which to make proposed findings of fact and conclusions of law in
the first instance...[and] the mere fact that a bankruptcy
proceeding [is or is not] a core proceeding is not a sufficient
reason to grant a motion for withdrawal of the reference"). Thus,
consideration of both judicial economy and uniform bankruptcy
administration requires this dispute to remain with the Bankruptcy
Court.

        The only "cause" asserted here by the Defendant for withdrawal
of the reference is its argument that this case is a "non-core"
proceeding, and that any findings and conclusions by the Bankruptcy
Court will be subject to *de novo* review by this Court in any event.
But that argument has no merit.  Tellingly, the Defendant's own
authority for its argument that the case is "non-core" demonstrates
why the reference should not be withdrawn.

        In *In re Daewoo Motor America, Inc.*, 302 B.R. 308, 314 (C.D.
Cal. 2003), the plaintiff-insured's cargo of cars was damaged by a

-18-

hail storm.  The plaintiff "determined that it made more sense to sell the vehicles 'as is' than to repair them," and, after notifying the insurer, obtained the bankruptcy court's approval to sell the cars.  *Id.* at 309.  The insurer denied coverage.  In its answer in the coverage dispute, the insurer raised two affirmative defenses pertaining to mitigation which, according to the District Court, challenged the plaintiff's decision to sell rather than repair.  Thus, the Court held that the insurer's answer "necessarily calls into question both the propriety of the sale and the reasons for its taking place."  *Id.* at 314.  The bankruptcy court had "already considered these questions and, therefore, not withdrawing the reference promot[ed] judicial economy and uniform bankruptcy administration."  *Id.*

The *Daewoo* court found, notwithstanding its conclusion that the particular facts of that case made it "non-core," that other factors -- all of which are present here -- should be given greater weight in considering a motion to withdraw the reference.  That conclusion is sound because conditioning withdrawal on an argument that the district court must eventually conduct a *de novo* review would effectively "prevent any non-core matter from ever being referred to the bankruptcy court." *In re H&W Motor Express Co.*, 343 B.R. at 215 (holding that a "party's mere threat to file objections to any future report and recommendation issued by the bankruptcy judge in a non-core proceeding is not 'cause' for withdrawal of the

-19-

reference under Section 157(d)" and that "[w]ithout more, this argument carries little, if any, weight in favor of withdrawal").

Federal cites four other cases (at pages 4-5 of their moving memorandum) for the proposition that, because an insurance dispute is ruled to be "non-core," courts "routinely" withdraw the reference. However, none of Federal's cases support that proposition. In fact, the withdrawal order entered in *In re Beverly,* 2007 Bankr. LEXIS 3928 at *2 (C.D. Cal. 2007) reveals that the parties stipulated that (i) the insurer had timely asserted the right to a jury trial; (ii) the insurer was entitled to a jury trial; and (iii) the coverage dispute was "non-core". (Ex. E, *Beverly* Order). Further, the decision and withdrawal order in *Gulf USA Corp. v. Federal Ins. Co.*, 259 F.3d 1059, n.7 (9th Cir. 2001) reveal that the district court: (i) initially denied the motion to withdraw the reference even after the bankruptcy court determined the dispute to be "non-core" (*id.*); and (ii) ultimately granted the motion without making any reference to the "core" or "non-core" nature of the proceedings more than 2 ½ years later. (Ex. F, *Gulf USA* Order).

The remaining cases cited by Federal, far from "holding" that withdrawal was *based on* a core/non-core distinction, did not even mention the terms "core" or "non-core." *Aetna Cas. & Sur. Co. v. Dannenfeldt,* 778 F. Supp. 484, 488 (D. Ariz. 1991); *Certain*

-20-

527336

*Underwrites at Lloyds v. Inlet Fisheries, Inc.*, 2006 U.S. Dist. LEXIS 37921 at N.32 (D. Alaska 2006).

Notably, Federal debunks its own theory by citing cases where the court denied the motion to withdraw the reference: *Daewoo*, 302 B.R. at 313-14; *In re Ramex Inat'l, Inc. v. Maryland Cas. Co.*, 91 B.R. 313, 316 (E.D. Pa. 1988) ("no cause exists for the withdrawal of reference to the bankruptcy court" even where the coverage dispute was held to be non-core); *Gulf USA*, 259 F.3d 1059, n.7 (*but see* Ex. F, motion granted 2 ½ years later without stating the reasons therefore); *see also In re Pied Piper Casuals, Inc.*, 65 B.R. 780, 781 (S.D.N.Y. 1986) (concluding dispute to be non-core, but remanding to the bankruptcy court).

In any event, the instant coverage dispute is "core." As an initial matter, none of the nine cases cited by Federal for the proposition that insurance coverage disputes are non-core involved all of the three salient facts present here: (i) a complaint seeking a declaratory judgment that would not merely decide whether such contract had been breached, but which would govern how other coverage claims under the subject insurance contract would be handled by the Debtor; (ii) a post-petition breach of an insurance contract;[4] and (iii) the present possessory interest of the debtor in retaining policy proceeds already advanced by the insurer.

---

[4] Cases holding that post-petition breaches of pre-petition insurance contracts are "core" are analyzed in greater detail in the Defendant's own cases. *See,*

-21-

527336

It is well settled that "when a debtor...claim interests in property asserted to be part of the estate, the bankruptcy court has core jurisdiction to adjudicate all of those interests." *All Am. Laundry Serv. v. Ascher (In re Ascher)*, 128 B.R. 639, 643 (Bankr. N.D. Ill. 1991)(emphasis added). That is because matters concerning administration and property of the estate arise under title 11, and therefore are considered "precisely the type of proceedings over which the bankruptcy court has ... jurisdiction." *Koken v. Reliance Ins. Co. (In re Reliance Group Holdings, Inc.)*, 273 B.R. 374, 394 (Bankr. E.D. Pa. 2002) (citing *In re Ascher*, 128 B.R. at 643).

As such, "a declaratory judgment proceeding...to resolve issues concerning coverage and indemnification under insurance policies," are "core proceedings" as defined by 28 U.S.C. § 157(b) because the "determination of coverage under those policies, and the operation of specific provisions of those policies...[is] essential and inextricably tied to the administration of the estate." *In re Prudential Lines, Inc.*, 170 B.R. 222, 229 (S.D.N.Y. 1994) (holding that a declaratory judgment action was a "core" proceeding because the plaintiff was not seeking merely damages for losses covered by an insurance policy, but because the plaintiff was also seeking to determine the operation of specific provisions

_____

*e.g., Maryland Cas. Co. v. Aselco, Inc.*, 223 B.R. 217, 220-21 (D. Kan. 1998); *Daewoo*, 302 B.R. at 312-13.

-22-

527336

of the insurance policies, and those determinations would affect
any subsequent actions brought in connection with the insurance
policies).

Here, whereas the breach of contract claim under the BPL
Policy concerns the Defendant's repudiation of coverage solely of
the Mass AG claim, the First Amended Complaint also seeks a
declaration that, going forward, Fremont owes no "duty to
cooperate" with the Defendant with respect to *any* underlying claim
within the scope of the BPL policy (Adv. Dkt. at 17).  Indeed, as
the Defendant has acknowledged in its own documents (annexed as
Exhibit 4 to the Summary Judgment Motion), at least six claims
brought by Fremont *other than* the Mass AG fall within the BPL's
insuring clause – "Darden," "Habib," "Harris," "Lacet," "Smith,"
and "Beckett".  (Ex. D).  Importantly, the declaratory judgment
claim is not limited to the duty to cooperate in connection with
the Mass AG claim:  it applies to any and all claims that may fall
within the BPL Policy's insuring clause, including not only those
claims listed above, but also any claims which have not yet been
filed.

Similarly, whereas the breach of contract claim under the CGL
Policy concerns the Defendant's repudiation of coverage solely of
the NAACP's claim, the First Amended Complaint, again, contains no
"NAACP" limitation with respect to the declaratory judgment claim
brought under that same policy (Adv. Dkt. at 17).  Because the CGL

-23-

Policy is an occurrence-based policy, claims can be made against the policy at any time, as long as the events triggering coverage occurred during the policy period.  Again, the declaratory judgment claim is not limited to the duty to cooperate with respect to the NAACP claim, but will apply to any and all claims that fall within the policy's insuring clause.

Because the declaratory judgment claims will resolve interpretation issues for eternity, future claims will necessarily be administered under the "law of the case" established by the Bankruptcy Court's ruling on this purely legal issue.  As a result, the declaratory judgment actions involve crucial issues affecting the administration of the estate and a determination that the future proceeds of the policies are property of the estate.

Moreover, the Defendant's own case -- *Federal Ins. Co. v. Glen Ivy Mgmt. Co.*, 171 B.R. 98 (Bankr. C.D. Cal. 1994) -- provides another reason for finding that the instant coverage dispute is "core".  In *Glen Ivy*, the Court held that the bankruptcy court's "core jurisdiction" includes disputes regarding "the estate's present possessory interest in assets of a debtor or the estate." Id. at 104. In this case, the Defendant has advanced approximately $5 million in defense costs to Fremont, while simultaneously asserting a right to recoup any moneys paid if certain events trigger the application of an exclusion to the insurance policy. Thus, because the coverage dispute will govern the debtor's

-24-

527336

"present possessory interest" in moneys already advanced by the Defendant, the adversary proceeding (pursuant to the Defendant's own case) is "core".

As all of the factors establish that cause does not exist to withdraw the reference to the Bankruptcy Court, the Motion should be denied and the Bankruptcy Court should be allowed to continue to adjudicate this adversary proceeding.

### IV.   CONCLUSION

For the foregoing reasons, the Motion to Withdraw Reference to the Bankruptcy Court filed by Federal Insurance Company should be denied.

DATED:  June 29, 2009

Respectfully submitted,

                             /s/ J. Thomas Gilbert

                             THEODORE B. STOLMAN
                             WHITMAN L. HOLT
                             STUTMAN, TREISTER & GLATT, PC

                             Attorneys for Plaintiff
                             Fremont General Corporation,
                             Debtor-in-Possession

                             -and-

                             J. THOMAS GILBERT
                             JOHN W. SCHRYBER
                             ROBERT W. JONES
                             KRISTEN N. BEALL
                             PATTON BOGGS LLP

                             Attorneys for Plaintiffs
                             Fremont General Corporation,

-25-

527336

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Debtor-in-Possession and Fremont
Reorganizing Corporation (f/k/a
Fremont Investment & Loan)

-26-

527336

1

PROOF OF SERVICE

2

I, Rhonda L. Thomas, the undersigned, declare:

3

I am a citizen of the United States and employed in Dallas

4

County, Texas. I am over the age of 18 years and not a party to
the within action or proceeding. My business address is 2001 Ross

5

Avenue, Suite 3000, Dallas, Texas 75201.

6

On June 29, 2009, I served the foregoing document described as

7

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO WITHDRAW
REFERENCE TO BANKRUPTCY COURT; DECLARATION IN SUPPORT THEREOF on

8

all interested parties in this action as listed below as follows:

9

The Honorable Erithe Smith          Fremont General Corporation
USBC - Central District of California   2727 E. Imperial Highway

10

Ronald Reagan Federal Building and    Brea, CA  92821-6713
United States Courthouse              Attention:  General Counsel

11

411 West Fourth Street, Ste. 5041
Santa Ana, CA 92701-4593

12

United States Trustee                Federal Insurance Company

13

411 West Fourth Street, Suite 9041    15 Mountainview Rd.
Santa Ana, CA  92701-4593            Warren, New Jersey  07059-6711

14

Erik Pritchard                       Wallace Christensen

15

Troutman Sanders LLP                 Troutman Sanders LLP
5 Park Plaza, Suite 1200             401 9th Street, N.W. Suite 1000

16

Irvine, CA 92614-8592                Washington, D.C.  20004-2134
Fax:  949.622.2739

17

E-Mail:
erik.pritchard@troutmansanders.com

18

19

[ X ]    **BY ELECTRONIC MAIL** – I electronically filed the

20

foregoing document with the clerk of court for the U.S. District
Court, Central District of California, using the electronic case

21

filing system of the Court.  The electronic case filing system sent
a "Notice of Electronic Filing" to the aforementioned attorneys of

22

record who have consented to accept this Notice as service of this
document by electronic means.

23

[ X ]    **BY MAIL** – I deposited such envelope in the mail at

24

Dallas, Texas, with first class postage thereon fully prepaid.  I
am readily familiar with the business practice for collection and

25

processing of correspondence for mailing.  Under that practice it
is deposited with the United States Postal Service on that same

26

day, at Dallas, Texas, in the ordinary course of business.  I am
aware that on motion of the party served, service is presumed

27

invalid if postage cancellation date or postage meter date is more
than on (1) day after the date of deposit for mailing in affidavit.

28

–27–

527336

1

2    I declare that I am employed in the office of a member of a
bar of this Court at whose direction the service was made. I
3    declare under penalty of perjury that the foregoing is true and
correct.

4

    Executed on June 29, 2009, at Dallas, Texas.

5

6                          _Rhonda L. Thomas_
                           Rhonda L. Thomas
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                              -28-

527336

1  THEODORE B. STOLMAN (State Bar No. CA 52099)
   TStolman@Stutman.com
2  Whitman L. Holt (State Bar No. CA 238198)
   WHolt@Stutman.com
3  STUTMAN, TREISTER & GLATT, PC
   1901 Avenue of the Stars, 12th Floor
4  Los Angeles, California 90067
   Telephone:  (310) 228-5600
5  Facsimile:  (310) 228-5788

6  Attorneys for Plaintiff Fremont General Corporation,
   Debtor-in-Possession
7
   -and-
8
   JOHN THOMAS GILBERT (State Bar No. CA 183362)
9  TGilbert@pattonboggs.com
   JOHN W. SCHRYBER (State Bar No. NY 7881)
10 JSchryber@pattonboggs.com
   ROBERT W. JONES (State Bar No. TX 10951200)
11 RWJones@pattonboggs.com
   PATTON BOGGS LLP
12 2001 Ross Avenue, Suite 3000
   Dallas, Texas 75201-8001
13 Telephone: (214) 758-1500
   Facsimile: (214) 758-1550
14
   Attorneys for Plaintiffs Fremont General Corporation,
15 Debtor-in-Possession, and Fremont Reorganizing Corporation
   (f/k/a Fremont Investment & Loan)
16
                    UNITED STATES DISTRICT COURT
17               CENTRAL DISTRICT OF CALIFORNIA
                       SANTA ANA DIVISION
18 In re
   FREMONT GENERAL CORPORATION,          ) Civil Case No. 8:09-cv-00678-DOC
19 Debtor-in-Possession                  ) Bankr. Case No. 8:08-bk-13421-ES
                                         ) Adv. Proc. 8-08-ap-01418-ES
20 Tax I.D. 95-2815260                   )
                                         ) Chapter 11
21 ─────────────────────────────────────)
   FREMONT GENERAL CORPORATION,          )
22 Debtor-in-Possession, and            ) **DECLARATION OF JOHN W. SCHRYBER**
   FREMONT REORGANIZING                  ) **IN SUPPORT OF PLAINTIFFS'**
23 CORPORATION (f/k/a                    ) **RESPONSE IN OPPOSITION TO**
   FREMONT INVESTMENT & LOAN),           ) **FEDERAL INSURANCE COMPANY'S**
24                                       ) **MOTION TO WITHDRAW REFERENCE TO**
             Plaintiffs,                 ) **BANKRUPTCY COURT**
25                                       )
   vs.                                   )
26                                       )
   FEDERAL INSURANCE COMPANY,            )
27                                       )
   ─────────────────Defendant.──────────)
28                                         -1-

026463.0113\527396.02

I, John W. Schryber, declare pursuant to 28 U.S.C § 1746 as follows:

　　1.　　I am a member of the law firm of Patton Boggs LLP, counsel to the Plaintiffs herein.  I submit this Declaration in support of Plaintiffs' Response in Opposition to Defendant Federal Insurance Company's Motion to Withdraw Reference to Bankruptcy Court (the "Opposition Response").

　　2.　　On June 18, 2009, the Bankruptcy Court convened a status conference.  The Defendant advised the court that it had filed a motion to withdraw the reference.  Counsel inquired of the Bankruptcy Court whether the Bankruptcy Court intended to stay the adversary proceeding during the pendency of this motion to withdraw the reference.  The Bankruptcy Court stated that no stay would be imposed.

　　3.　　Exhibit A to the Opposition Response is a true and correct copy of the Findings of Fact and Conclusions of Law Supporting Order Granting Motion for Order Approving Jointly Proposed Settlement Agreement between the Debtor, Fremont Reorganizing Corporation, and the Commonwealth of Massachusetts, filed May 29, 2009, located at Dkt. 706, Case No. 8:08-bk-13421-ES.

　　4.　　Exhibit B to the Opposition Response is a true and correct copy of the Motion for Partial Summary Adjudication as to Count I of the First Amended Complaint, filed June 12, 2009, located at Dkt. 31, Case No. 8:08-ap-01418-ES.

-2-

5. Exhibit C to the Opposition Response is a true and correct copy of the Motion for Partial Judgment on the Pleadings, filed on April 16, 2009, located at Dkt. No. 25, Bankruptcy Case No. 8:08-ap-01418-ES.

6. Exhibit D to the Opposition Response is a true and correct copy of "excerpts" from an April 6, 2009 Letter, attaching "Audit Reports," from Hugh D. Spears, Assistant Vice President of Chubb & Son, a division of Federal Ins. Co. to Donald E. Royer, Esq., Executive Vice President & General Counsel of Fremont General Corporation.  Plaintiffs provided a complete copy of this letter (including attachments) in support of Plaintiffs' Motion for Partial Summary Adjudication  as to Count I of the First Amended Complaint, located at Dkt. 31, Declaration of John W. Schryber, Ex. 4, Case No. 8:08-ap-01418-ES.

7. Exhibit E to the Opposition Response is a true and correct copy of the withdrawal order captioned *Wolkowitz v. Fireman's Fund Ins. Co. (In re Beverly),* Case No. 2:07-cv-00745-GW (C.D. Cal. Feb. 23, 2007).

8. Exhibit F to the Opposition Response is a true and correct copy of the withdrawal order captioned *Gulf USA Corp. v. Federal Ins. Co. (In re Gulf USA Corp.),* Case No. 3:98-cv-00440-EJL (D. Id. Nov. 6, 1998).

-3-

026463.0113\527396.02

1    The factual statements made in this declaration are true and

2  correct to the best of my knowledge, and made subject to penalty of

3  perjury.

4

5    Executed this 29th day of June 2009 by

6

7  _____
        John W. Schryber

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    -4-